# UNITED STATES DISTRICT COURT

_____ DISTRICT OF WYOMING _____

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

DEC 13 2004 \ 4:17 pm

Betty A. Griess, Clerk
Casper

**UNITED STATES OF AMERICA**

V.

**STEVEN ARTHUR WINSOR**

**CRIMINAL COMPLAINT**

CASE NUMBER: 04‑m‑222‑D

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.

### COUNT ONE

From on or between January 1, 2001, and January 1, 2004, in the District of Wyoming, and elsewhere, **STEVEN ARTHUR WINSOR,** the Defendant herein, did knowingly, intentionally, and unlawfully combine, conspire, confederate and agree with other persons both known and unknown to possess with intent to distribute, and to distribute, more than 50 grams of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance.

**(COMPLAINT CONTINUED)**

In violation of **21 U.S.C. §§ 841(a)(1), (b)(1)(B) and 846.**

I further state that I am a Special Agent with the Drug Enforcement Administration and that this Complaint is based on the following facts:

**(AFFIDAVIT ATTACHED/CONTINUED)**

Continued on the attached sheet and made a part hereof:    XX Yes        No

_____
Signature of Complainant
**Steven Woodson**

Sworn to before me and subscribed in my presence,

| December 13, 2004 | at | Casper, Wyoming |
|---|---|---|
| Date | | City and State |

**William F. Downes**
**Chief U.S. District Court Judge**

_____
Signature of Judicial Officer

Name & Title of Judicial Officer

(Winsor Complaint Continuation)

## COUNT TWO

From on or between January 1, 2001, through and including January 1, 2004, in the District of Wyoming, the Defendant, **STEVEN ARTHUR WINSOR,** having previously been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed firearm(s) and ammunition which had previously traveled in and affected interstate commerce.

In violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

## COUNT THREE

From on or between January 1, 2001, through and including January 1, 2004, in the District of Wyoming, the Defendant, **STEVEN ARTHUR WINSOR,** having previously been convicted of a misdemeanor crime of domestic violence, knowingly possessed firearm(s) and ammunition which had previously traveled in and affected interstate commerce.

In violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(2).

## AFFIDAVIT OF STEVEN WOODSON

I, Steven Woodson, being duly sworn, depose and state the following:

1.  I am a Special Agent of the United States Drug Enforcement Administration. I have been a Special Agent for the United States Drug Enforcement Administration since 1992. I am currently assigned to the Casper, Wyoming, Post of Duty. Prior to my employment with the Drug Enforcement Administration, I was employed as a Special Agent with the Wyoming Division of Criminal Investigation for six years and as a Detective with the Warrensburg Police Department in Warrensburg, Missouri, for approximately five years. Since 1986, I have worked almost exclusively on narcotics and money laundering violations of both federal and state laws. Specifically, I have conducted or assisted with investigations relative to the manufacture, smuggling and distribution of controlled substances and the subsequent illicit transfer and laundering of the proceeds derived from the sale of controlled substances.

2.  As a result of this investigative activity, I have conducted and/or participated in several state court and federal court authorized wire intercepts. These intercepts consisted of both hard line and cellular telephones. I have also participated in hundreds of narcotics investigations which have resulted in the seizure of multi kilograms of cocaine, marijuana, methamphetamine and multi pound quantities of heroin. I am familiar with, and have participated in all of the normal methods of investigation, including, but not limited to, visual surveillance, questioning of witnesses, the use of search and arrest warrants, the use of informants, the use of pen registers, the utilization of undercover agents and the use of court authorized wire intercepts.

3.      On January 10, 2002, the affiant interviewed Andrea Stanley[1] in Powell, Wyoming. Stanley admitted being involved in the distribution of methamphetamine in the District of Wyoming. Stanley stated that round November 2001, she arranged for **STEVE WINSOR ("WINSOR")** to purchase ⅛ ounce quantities of methamphetamine from another individual. Stanley stated that **WINSOR** would subsequently distribute the methamphetamine to various other individuals.

4.      On June 6, 2003, the affiant conducted a "proffer" interview of Gary Lentz[2]. This interview was conducted pursuant to an agreement between Lentz' attorney, who was present, and the U.S. Attorney's office. This agreement required Lentz to provide truthful information. Lentz admitted being involved in the use and/or distribution of methamphetamine since 1990. Lentz identified various individuals from whom he obtained methamphetamine. Lentz stated that he obtained methamphetamine in various quantities ranging from grams to ¼ pound quantities. Lentz further stated that he distributed this methamphetamine to various individuals including **WINSOR**.

---

[1]     Stanley pleaded guilty in U.S. District Court to the charge of conspiracy to possess with intent to distribute and to distribute methamphetamine. On February 12, 2004, Stanley was sentenced to 70 months imprisonment, 48 months of supervised release and a $250 fine. Stanley lived with Gary Lentz for several years.

[2]     Lentz pleaded guilty in U.S. District Court to the charge of conspiracy to possess with intent to distribute and to distribute methamphetamine and being an unlawful user of a controlled substance in possession of a firearm. On November 17, 2003, Lentz was sentenced to 87 months imprisonment, 48 months supervised release and a $200 fine on each count to run concurrently. Lentz and Stanley lived together for several years.

5.      Lentz stated that between 2001 and 2003 Lentz distributed methamphetamine to **WINSOR** in various amounts. Lentz stated that he would provide methamphetamine to **WINSOR** on a cash and front[3] basis. Lentz stated that in January 2003, he provided ¼ ounce of methamphetamine to **WINSOR**. Additionally, Lentz stated that he would provide three grams of methamphetamine every other day to **WINSOR** at a cost of $200. Additionally, Lentz stated that **WINSOR** was present when Lentz received methamphetamine from some of the sources of supply. Lentz stated that **WINSOR** would also act as protection for Lentz during narcotics transactions. Lentz stated that **WINSOR** sawed off a 12 gauge shotgun for Lentz. Additionally Lentz stated that he and **WINSOR** would frequently shoot firearms together. Lentz further stated that **WINSOR** had possessed blasting caps at Lentz' residence in the District of Wyoming around January 2002.

6.      Lentz further advised that in January or February 2003, he observed **WINSOR** in possession of a .22 caliber revolver handgun in the District of Wyoming.

7.      On June 19, 2003, the affiant received information that **WINSOR** had been blowing marijuana into the faces of at least one minor child. On June 19, 2003, the affiant and Cody police officer Darrell Steward observed **WINSOR** at a city park in Cody, Wyoming. The affiant and Officer Steward were aware that **WINSOR** was wanted on a local warrant that charged him with failure to comply with a court order. The affiant and Officer Steward approached **WINSOR** and he

---

[3]      The term "front" means to provide the controlled substance to a person on a credit basis, with the expectation of receiving payment at a later time.

was subsequently arrested. The affiant and ATF Special Agent Al Hobaugh later interviewed **WINSOR** at the Cody Police Department. Prior to the interview **WINSOR** was advised of his rights per *Miranda*. **WINSOR** acknowledged understanding his rights and agreed to speak with the affiant. **WINSOR** stated that he had known Andrea Stanley and Gary Lentz since the mid 1980s. **WINSOR** stated that he stayed with Lentz and Stanley a couple of years prior to the interview for "protection." **WINSOR** stated that he observed Lentz receive unknown quantities of methamphetamine from a person. Subsequently this person threatened Lentz regarding a drug debt. **WINSOR** admitted obtaining ⅛ ounce quantities of methamphetamine on front for $250 each. **WINSOR** stated he distributed some of this methamphetamine. **WINSOR** also advised he previously possessed a .44 magnum handgun. **WINSOR** further stated that he had sawed off a 12 gauge shotgun for Lentz. He stated that he measured the barrel so that it was not of illegal length. **WINSOR** was asked about possessing blasting caps. **WINSOR** also admitted to previously possessing blasting caps and dynamite.

8. **WINSOR** provided the agents with written permission to search the residence and vehicle where he was staying located at 938 19th Street, Space 73, Cody, Wyoming[4]. The affiant and other agents searched this residence and vehicle. During the search the affiant located a locked backpack which **WINSOR** claimed was his. Inside the backpack the affiant located a blasting cap

---

[4] **WINSOR** was living at this residence with Andrea Stanley. Stanley was on pre-trial release at this time. Stanley's pre-trial release was subsequently revoked.

and unused syringes. The affiant also located in the same room a box containing clothing. **WINSOR** claimed that the box belonged to him. A further search of the box revealed a box of .22 caliber ammunition. The search of **WINSOR**'s vehicle resulted in the seizure of shotgun shells, .22 caliber ammunition, .44 magnum ammunition and a bulletproof vest.

9. The affiant has received and reviewed a report prepared by Officer Steward. This report indicates that on June 20, 2003, he contacted a person known to the U.S. Attorney in Cody, Wyoming. This person advised Officer Steward that in late May or early June 2003, he/she had provided a Colt .22 caliber revolver to **WINSOR** in the District of Wyoming. This person further stated that **WINSOR** possessed the revolver a "couple of times eight or nine months ago."

10. Officer Steward took custody of the Colt New Frontier .22 caliber single action revolver bearing serial number G181548 from this person. This firearm is currently located at the Wyoming State Crime Laboratory.

11. Officer Steward advised that this revolver is not manufactured in the District of Wyoming and is believed to manufactured in Connecticut. The affiant reviewed the Colt Manufacturing web site which states that Colt firearms are manufactured in the area of Hartford, Connecticut.

12. On August 13, 2003, the affiant conducted a "proffer" interview of Stanley. The interview was conducted pursuant to an agreement between Stanley's attorney and the U.S. Attorney's office. The agreement required Stanley to provide truthful information. Stanley

confirmed her January 2002 statement regarding **WINSOR** obtaining and distributing methamphetamine. Additionally, Stanley advised that **WINSOR** had shown her a bucket allegedly containing blasting caps and explosives in the District of Wyoming. Stanley also stated that **WINSOR** previously sawed off a firearm for Lentz. Stanley stated that she also shot firearms with Lentz and **WINSOR.**

13. The affiant has reviewed a copy of a Park County, Wyoming, judgment and sentence in criminal case number 3886. This judgment and sentence indicates that on November 26, 1996, **WINSOR**, who had pleaded guilty to the felony charge of delivery of a controlled substance in violation of Wyoming Statute § 35-7-1031(a)(ii), was sentenced to not less than three years nor more than five years imprisonment. This sentence was suspended and **WINSOR** was ordered to serve a split sentence of one year incarceration at the Park County Detention Center and upon release from confinement be placed on probation for five years. **WINSOR's** criminal history indicates that in June 1999, he was convicted of family violence battery and was sentenced to 98 days in jail with 90 days suspended, one year probation and a $100 fine. The criminal history also indicates that in July 1999, **WINSOR** violated his probation from the original felony drug charge. Consequently, **WINSOR** was sentenced to an additional five years probation. The criminal history indicates that in January 2001, **WINSOR** was again revoked for a probation violation. He was sentenced to 60 days confinement.

14.     On December 6, 2004, the affiant was advised by the Park County Attorney's Office that **WINSOR** was a party named in a child neglect action involving his minor child. The action alleges **WINSOR** blew marijuana smoke in the face of his minor child.

## PENALTY SUMMARY

**DATE:** December 13, 2004

**DEFENDANT NAME:** Steven Arthur Winsor

**ADDRESS:** 1501 ½ Alger
Cody, Wyoming

**OFFENSE AND PENALTIES:**

**OFFENSE:** **Count 1:** 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and 846
Conspiracy to Possess with intent to Distribute, and to Distribute, Methamphetamine

**PENALTIES:** 5-40 YEARS IMPRISONMENT
$2,000,000 FINE
4 YEARS SUPERVISED RELEASE
$100 SPECIAL ASSESSMENT
CLASS "B" FELONY

**OFFENSE:** **Count 2:** 18 U.S.C. §§ 922(g)(1) and 924(a)(2)
Felon in possession of firearm(s) and ammunition

**PENALTIES:** 0-10 YEARS IMPRISONMENT
$250,000 FINE
3 YEARS SUPERVISED RELEASE
$100 SPECIAL ASSESSMENT
CLASS "C" FELONY

**OFFENSE:** **Count 3:** 18 U.S.C. §§ 922(g)(9) and 924(a)(2)
Possession of firearm(s) and ammunition by a person convicted of domestic violence

**PENALTIES:** 0-10 YEARS IMPRISONMENT
$250,000 FINE
3 YEARS SUPERVISED RELEASE
$100 SPECIAL ASSESSMENT
CLASS "C" FELONY

**TOTALS:** 5-60 YEARS IMPRISONMENT
$2,500,000 FINE
10 YEARS SUPERVISED RELEASE
$300 SPECIAL ASSESSMENT

Steven Arthur Winsor
Penalty Summary - Page 2
December 13, 2004

**AGENT:** Steven Woodson
DEA

**AUSA:** Kelly H. Rankin

**ESTIMATED TIME OF TRIAL:**

✔ five days or less
___ over five days
___ other

**INTERPRETER NEEDED:**

___ Yes
✔ No

**THE GOVERNMENT:**

✔ will

___ will not

**SEEK DETENTION IN THIS CASE.**

___ The court should not grant bond because the defendant is not bondable because there are detainers from other jurisdictions